JODI LINKER
Federal Public Defender
Northern District of California
SAMANTHA JAFFE
Assistant Federal Public Defender
19th Floor Federal Building, Rm 19-6884
450 Golden Gate Ave.
San Francisco, CA 94612
Telephone:   (415) 436 7700
Facsimile:   (415) 436 7706
Email:        Samantha_Jaffe@fd.org

Counsel for Defendant John Khuu

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JOHN KHUU, <br><br> Defendant. | **Case No.:** CR 22–302 CRB <br><br> **JOHN KHUU'S SENTENCING MEMORANDUM** <br><br> **Hearing Date:**   October 3, 2025 <br> **Hearing Time:**   9:30 a.m. |

**INTRODUCTION**

John Khuu believed that the only way anyone would love him or want to be around him was if he could pay for things with money earned from selling drugs, while in the depths of his own addiction. PSR at ¶¶ 16, 53. That belief manifested in truly terrible choices, choices Mr. Khuu deeply regrets, and choices that caused immense harm.

Mr. Khuu has been in federal custody since August 19, 2022. PSR at ¶ 4. He was already sentenced to 87 months for a related case in the Eastern District of Texas. PSR at ¶ 34. He has served 37 months and fifteen days on that case. That prior sentence is the basis for the expedited sentencing request here: Mr. Khuu cannot begin to earn credit on this case until he is

sentenced.[1]

The parties' recommendations here are approximately two years apart: the defense request is to sentence Mr. Khuu to 50 months, concurrent, on this case, which is the equivalent of a near-fully concurrent 87-month global sentence on both cases. *See supra* n.1. The government and United States' Probation's request is for 76 months, with this sentence to be served concurrently with the remainder of the sentence from the Eastern District of Texas (which has 49.5 months remaining). Functionally, the government and Probation's request will result in Mr. Khuu being sentenced to an additional 26.5 months in custody.

The defense request for a fully concurrent 87-month sentence is animated by three key factors: first, Mr. Khuu's background: a childhood was marked by violence in the neighborhood, instability, lack of parental guidance, and abuse, *see, e.g.*, PSR at ¶¶ 42-47, and an adolescence consumed by addiction and loneliness, *see, e.g.*, PSR at ¶¶ 52-53; second, Mr. Khuu has exhibited nothing other than true remorse for his conduct, and commitment to do better and be better, PSR at ¶ 16; and third, avoidance of unwarranted sentencing disparities: Michael Mew, who was charged in a separate case but was involved in this conduct, was sentenced to 30 months, a fraction of the sentence Mr. Khuu has already received, PSR at ¶ 12, n.1, and in spite of being in custody for over three years, Mr. Khuu has not had the chance to earn any First Step Act ("FSA") credits.

**GUIDELINES CALCULATION & OBJECTIONS TO THE PRESENTENCE REPORT**

The parties agreed on the applicable adjusted offense level as part of the plea agreement. The defense has no objection to United States Probation's calculation as to the offense level, as laid out in the PSR. The defense objections/clarifications to the PSR are detailed below:

---

[1] A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences-- (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; **that has not been credited against another sentence.** 18 U.S.C. § 3585(b) (emphasis added). Undersigned counsel contacted BOP regional counsel, who confirmed that the prior-imposed sentence in Texas is being credited to that sentence, and so Mr. Khuu's time in this case, though he has been in custody since August 2022, will not begin to run until the date of sentencing.

DEFENSE SENTENCING MEMORANDUM
*KHUU*, CR 22–302 CRB

2

because of the shorter timeline in this case, the parties waived the standard objection process to Probation directly, and thus the defense is just filing these directly with this Court.

1. Paragraph 4: The defense believes that Mr. Khuu appeared for his Rule 5 proceedings in the Central District of California, not this District.

2. Paragraphs 31, 35-37: Paragraph 31 describes a conviction for simple possession of marijuana and speeding. Under U.S.S.G. § 4A1.2(c)(2), traffic infractions for speeding are not counted. The California Penal Code § 11357(c) conviction, an infraction, is no longer a crime following California Prop 64 (effective November 9, 2016). Per the PSR, Mr. Khuu pled to the infraction the day before Prop 64 became law, on November 8, 2016.[2] There is nothing to indicate Mr. Khuu's case is ineligible for standard relief available to individuals statewide, which includes dismissal and sealing. Accordingly, the defense objects to the counting of the 2015 conviction. Practically, that would result in the same Criminal History Category, but with one fewer point (a subtotal of 9, rather than 10, and a total of 10, rather than 11). PSR at ¶¶ 35-37.

3. Paragraph 51: The ACES questionnaire was not administered during the Presentence Interview. However, defense counsel administered it after the PSI, and requests that the PSR be amended to reflect Mr. Khuu's ACES score, which is 7. That score is supported by the facts that are described throughout the rest of the PSR. *See, e.g.*, ¶¶ 43-47.

**DEFENSE SENTENCING REQUEST**

This Court is well aware of the factors set forth in 18 U.S.C. § 3553, and undersigned counsel will therefore not recite them all here. Mr. Khuu's history and characteristics and the need to avoid unwarranted sentencing disparities are the two factors most relevant to the defense request. The defense position is that those two factors cut in favor of the defense-requested 50-month sentence (which, in effect, is a fully concurrent 87-month sentence on both

---

[2] Proposition 64 went into effect on November 9, 2016. https://courts.ca.gov/programs-initiatives/criminal-justice-services/proposition-64-adult-use-marijuana-act

cases). A fully-concurrent 87-month sentence meets the overarching statutory charge for this Court to "impose a sentence sufficient, but not greater than necessary," to serve the statutory purposes of sentencing, in light of Mr. Khuu's troubled and traumatic background, genuine remorse and progress in custody, and to avoid unwarranted disparities. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc) (quoting § 3553(a)).

### I. Mr. Khuu's childhood was a swirl of instability, violence, and abuse.

Mr. Khuu's parents split up when he was two, after his father went to prison while his mother was pregnant with his younger brother, Denny. He was raised in Bayview by his grandmother and aunt, "surrounded by violence." PSR at ¶ 43. His mother struggled with mental health issues and addiction. *Id.* There were aunts and uncles and cousins throughout the house, and Mr. Khuu shared a room with his aunt and his grandmother. He experienced severe and serious trauma as a child, the effects of which carry through to this day. *Id.* at ¶ 47.

Mr. Khuu's mother visited him on weekends, for a time, but after he was eight or so she stopped coming to see him at all. He remembers that she stopped coming because he failed to bring his report card for her to see on a visit. *Id.* at ¶ 44. She continued to struggle with mental health issues and addiction, and Mr. Khuu has not communicated with or seen her in five years. *Id.* at ¶¶ 44-45. She has never visited him during any term of incarceration, not even when he was in juvenile hall.

When Mr. Khuu was 12, he was sent to live with his father, who was, by then, out of prison. His father's housing was unstable, they were evicted, and the home did not always have food. Mr. Khuu was also physically abused and, eventually, ended up in a group home. Those early teenage years were when Mr. Khuu began using drugs, and shortly after he went to the group home he was sent to juvenile hall, at 15. *Id.* at ¶¶ 45; 30.

### II. Mr. Khuu's adolescence was spent in juvenile custody, and his twenties were marked by addiction and loneliness.

Mr. Khuu spent nearly four years in California Youth Authority custody. The only visitor he had during those four years was his aunt: neither of his parents ever visited. He was diagnosed with depression during that time. *Id.* at ¶ 51.

When Mr. Khuu was released, in 2015, he was 19 years old. *Id.* at ¶ 30. Around the time of his release, Mr. Khuu's father remarried, and started a new family, with a woman who was very close in age to Mr. Khuu. Mr. Khuu, since then, has watched his father try to be present and parent his half-siblings in ways that he never showed up or tried to be a parent for Mr. Khuu. *Id.* at ¶ 46.

Mr. Khuu's addiction also took over during this period. He started drinking and using ecstasy at 13. In his early 20s, he started using cocaine and pills regularly. *Id.* at ¶ 52. Cocaine use "made him feel paranoid and schizophrenic." He would see and hear things that were not there. *Id.* at ¶ 53.

Mr. Khuu's addiction is a key piece of what led to his behavior in this case: by his own admission, his decision-making during this time was horrible, and he was not thinking about other people or the community. He was consumed with paranoid delusions and trying to feed his drug habit.

While those facts are too common in the cases this Court sees, the most tragic part for Mr. Khuu, and what sets this case apart, was the scale of Mr. Khuu's loneliness at this time. He believed that the only way his "family would love [him] again" was if he could make a lot of money through drug sales. *Id.* at ¶ 53. He committed this offense, ultimately, "so people would want [him] around" and so that his "family [would] want to be around [him]." *Id.* at ¶ 16.

### III. Mr. Khuu's remorse is sincere, and he has taken steps in custody to do better and be better.

This case has been on an unusual timeline because Mr. Khuu has been trying to get to this District to plead and be sentenced since his Texas sentencing. He tried to plead guilty at his initial appearance. He has been trying to take responsibility for this conduct for months: he began calling the Federal Public Defender's office in the spring, as soon as his sentencing in Texas took place.

Mr. Khuu spoke with Probation about his remorse during his interview, and talked about the ways in which his perspective has changed over the course of the last three years. He knows his actions damaged and caused harm to the community. He recognizes that he knew better,

even at the time. He knows that his behavior was and is wrong. *Id.* at ¶ 16. He also knows there is nothing he can do to fully undo the harm. Further, Mr. Khuu has seen the devastation addiction can cause up close, not only in his own life, but in a close friend who overdosed while he has been in custody. *Id.*

Mr. Khuu is also devastated to be in custody and not to be with his grandmother, who is ill. His family is lying to her about where he is out of fear knowing he is in jail will somehow make her health worse. *Id.* at ¶ 48. He has tried to forgive his father, and his only goals, after custody, is to be there to help support him and his younger half-siblings. *Id.* at ¶¶ 16, 48.

While in custody, Mr. Khuu has tutored other inmates for GED prep (the local facility in Texas did not have any classes). He tried to sign up to do the same thing, officially, when he got to BOP and FCI Phoenix, but was taken to this District and back to local custody after less than two weeks there. He intends to further his education in custody and continue helping others. He wants to learn to code, and to receive substance abuse and mental health ¶treatment. *Id.* at ¶¶ 51, 54.

**IV.   The defense-requested sentence avoids unwarranted sentencing disparities.**

As Probation noted in footnote 1 in the PSR, Michael Mew received a thirty-month sentence in a separate case with related conduct. PSR at ¶¶ 11-12. The defense-requested sentence is for Mr. Khuu to receive, in effect, a global sentence 57 months longer than the one Mr. Mew received: that amount, and no more, is sufficient and not greater than necessary in light of the additional transaction Mr. Khuu has pled guilty to, as well as the Eastern District of Texas conduct.

Further, because Mr. Khuu has been bounced between two jurisdictions, and has spent almost all of the last three years in local custody, unlike many similarly situated individuals, he has not been able to accrue any FSA credits. This is another basis for this Court to impose 50 here, which would effectuate a global 87-month sentence.

## CONCLUSION

The defense-requested sentence is appropriate in light of Mr. Khuu's immensely difficult childhood and adolescence, sincere remorse, and to avoid unwarranted sentencing disparities.

Mr. Khuu wants treatment, he wants counseling, and he wants help. He has gone through so much, and nonetheless has tried to forgive and move forward with his family. The defense joins Probation's request for a referral to RDAP, along with special conditions for substance abuse and mental health as conditions of supervision.

The defense-requested sentence, 50 months in this case and an 87-month global sentence between both cases, is sufficient but not greater than necessary to punish Mr. Khuu for his serious crime and to balance that seriousness with the progress he is making and the difficulties he has had to endure.

For the foregoing reasons, the defense respectfully requests that this Court impose 50 months in custody, concurrent to the 87-month sentence imposed in the Eastern District of Texas in 22-CR-062.

Dated:  September 26, 2025                    Respectfully submitted,

                                              JODI LINKER
                                              Federal Public Defender
                                              Northern District of California

                                                       /S
                                              _____
                                              SAMANTHA JAFFE
                                              Assistant Federal Public Defender