1  CRAIG H. MISSAKIAN (CABN 125202)
   United States Attorney

2

3  MARTHA BOERSCH (CABN 126569)
   Chief, Criminal Division

4  CHARLES F. BISESTO (CABN 271353)
   Assistant United States Attorney

5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-6405
7       FAX: (415) 436-7234
        Charles.Bisesto@usdoj.gov

8
   Attorneys for United States of America

9
                         UNITED STATES DISTRICT COURT
10
                       NORTHERN DISTRICT OF CALIFORNIA
11
                            SAN FRANCISCO DIVISION
12

13  UNITED STATES OF AMERICA,            )   CASE NO. CR 3:22-CR-302 CRB
                                         )
        Plaintiff,                       )   UNITED STATES' SENTENCING
14                                       )   MEMORANDUM
    v.                                   )
15                                       )   Date: October 3, 2025
    JOHN KHUU,                           )   Time: 9:30 a.m.
16                                       )   The Honorable Charles R. Breyer
        Defendant.                       )
17                                       )
                                         )
18

19  **I.    Introduction**

20       On October 3, 2025, defendant John Khuu will plead guilty to two counts of Importation of

21  MDMA, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and (b)(3).  Pre-Plea Presentence Investigation

22  Report (PSR) ¶ 1.  His conduct, arranging the importation of more than 10,000 grams of MDMA from

23  Germany into the United States, was serious, sustained, and dangerous.  PSR ¶¶ 7, 10, 13.  After

24  considering the factors in 18 U.S.C. § 3553(a), the government recommends a sentence of 76 months'

25  imprisonment, consistent with the parties' plea agreement and below the advisory Guidelines range of

26  140–175 months.  PSR ¶¶ 3, 62.  This sentence appropriately reflects the seriousness of the offense,

27  promotes respect for the law, provides just punishment, and deters similar conduct.

28

**II.    Facts**

In April 2019, defendant John Khuu purchased 5,000 grams of MDMA from a contact in Germany over the internet.  PSR ¶ 7.  He arranged for the drugs to be delivered to the Crowne Plaza Hotel in Burlingame, California, using the fictitious name "Josephine Lee."  *Id*.  Khuu coordinated with a hotel valet employee, D.C., to receive the package and offered to pay him $1,000 for his assistance.  PSR ¶ 8.  Customs and Border Protection intercepted the package at John F. Kennedy International Airport in New York on May 3, 2019.  PSR ¶ 7.  The MDMA pills were concealed in fish food containers.  *Id*.

On May 13, 2019, Homeland Security Investigations (HSI) attempted a controlled delivery of the package to the Crowne Plaza Hotel.  PSR ¶ 8.  Hotel management advised that packages delivered under fictitious names were typically received by valet staff and placed in a locked storage room.  *Id*.  Surveillance confirmed that D.C. retrieved the package from the storage room.  *Id*.  When interviewed, D.C. admitted that Khuu had asked him to accept packages under false names, including "Josephine Lee," and that he suspected they contained illegal drugs.  *Id*.  Agents recovered communications between D.C. and Khuu on the "We Chat" application, including photos of packages and tracking information, confirming Khuu's coordination of the shipments. PSR ¶ 9.

On June 19, 2020, Customs and Border Protection intercepted another DHL parcel originating from Germany that contained 5,000 grams of MDMA concealed in plastic containers labeled "Whey Protein Shake Bottles."  PSR ¶ 10.  The parcel was addressed to Allan Feng in San Francisco.  *Id.*

On July 2, 2020, agents executed a search warrant at Feng's residence.  PSR ¶ 11.  Feng admitted that a man named Michael Mew, also known as "Mike," had arranged for the package to be sent there.  *Id*.  Feng stated that Mew promised to pay off a drug debt if Feng agreed to accept the shipment.  *Id*.  On July 6, 2020, Mew arrived at Feng's residence to retrieve the parcel, arriving in a Tesla driven by Khuu.  PSR ¶ 12.  When law enforcement attempted to detain him, Khuu fled in the Tesla, nearly striking agents as he drove away at high speed.  *Id*.  Mew was arrested on scene, and a subsequent search of his residence revealed 10,000 Xanax pills in a closet.  *Id*.  Agents later confirmed, through Mew's text messages, that Khuu was the individual who coordinated the purchase of MDMA from Germany via the dark web.  *Id*.

In total, Khuu is responsible for the approximately 10,000 grams of MDMA he imported into the United States. PSR ¶ 13.

**III.    Procedural History**

On August 17, 2022, a grand jury in the Northern District of California returned a two-count indictment charging John Khuu with unlawful importation of a controlled substance, in violation of 21 U.S.C. § 952, and importation of a Schedule I controlled substance, in violation of 21 U.S.C. §§ 960(a)(1) and (b)(3), as well as a forfeiture allegation under 21 U.S.C. § 853. PSR ¶ 1.

On August 19, 2022, Khuu was arrested in the Central District of California on this indictment. At the time of arrest, he also had an outstanding warrant related to separate conduct prosecuted in the Eastern District of Texas. PSR ¶ 4. Khuu made an initial appearance on Rule 5 proceedings before U.S. Magistrate Judge Douglas F. McCormick, who ordered him detained and removed to Texas. *Id*.

On October 6, 2022, Khuu appeared before U.S. Magistrate Judge John D. Lowe in the Eastern District of Texas and was remanded to custody. PSR ¶ 4. Khuu later pled guilty, in March 2025, to conspiracy to commit money laundering and conspiracy to operate an unlicensed money transmitting business, and sentenced to 87 months' imprisonment. *Id.*

Following that conviction, Khuu was housed at a Bureau of Prisons facility in Tucson, Arizona, before being transferred to the Northern District of California. On July 18, 2025, Khuu made his initial appearance in this case before U.S. Magistrate Judge Peter H. Kang and was remanded to the custody of the United States Marshals, pending the outcome of this case. PSR ¶ 5. On August 20, 2025, Khuu appeared for a status hearing before Senior U.S. District Judge Charles R. Breyer. At that hearing, the Court ordered preparation of a pre-plea Presentence Report and scheduled a consolidated change-of-plea and sentencing hearing for October 3, 2025. PSR ¶ 2.

Pursuant to a written plea agreement under Rule 11(c)(1)(A) and (B), the parties have stipulated to certain Guidelines calculations, and the government has agreed to recommend a sentence not to exceed 76 months, concurrent with Khuu's Texas sentence. PSR ¶ 3.

**IV.    Sentencing Guidelines Calculation and Recommended Sentence**

The parties agree, and Probation confirms, that the proper Guidelines calculation begins with a base offense level of 32, pursuant to U.S.S.G. §§ 2D1.1(a)(5) and (c)(4). PSR ¶ 19. A three-level

1   reduction applies for acceptance of responsibility under U.S.S.G. § 3E1.1, resulting in a total offense

2   level of 29.  PSR ¶¶ 26-28.  With a Criminal History Category of V, the advisory Guidelines range is

3   140 to 175 months of imprisonment.  PSR ¶¶ 37, 62.

4           It is important to note that if this district had prosecuted the instant offense before the Eastern

5   District of Texas case, the defendant's criminal history category would have been lower at the time of

6   sentencing.  PSR ¶¶ 34-37.  The Texas conviction, which resulted in an 87-month sentence, substantially

7   increased the defendant's criminal history score and placed him in Category V.[1]  *Id*.  As a result, the

8   Guidelines range in this case is higher than it otherwise would have been had the Northern District of

9   California proceeded first.

10          **A.      Applicable Law**

11          The Court must impose a sentence sufficient, but not greater than necessary, to reflect the

12  seriousness of the offense, deter others from committing similar crimes, protect the public from the

13  defendant, and rehabilitate the defendant.  18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984,

14  991 (9th Cir. 2008).  Section 3553 sets forth several factors that the Court must consider in determining

15  a just sentence: (1) the nature and circumstances of the offense and the defendant's history and

16  characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines

17  range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing

18  disparities; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a);

19  *Carty,* 520 F.3d at 991.  The Guidelines should be the starting point and the initial benchmark.  *Gall v.*

20  *United States*, 552 U.S. 38, 49 (2007).  Though the guidelines are not binding, they "reflect a rough

21  approximation of sentences that might achieve section 3553(a)'s objectives."  *Rita v. United States,* 551

22  U.S. 338, 350 (2007).

23          **B.      Recommended Sentence**

24          The seriousness of Khuu's offense cannot be overstated.  He orchestrated two significant

25  importations of MDMA, totaling 10,000 grams, from overseas sources into the United States.  PSR ¶¶ 7,

26

27          [1] Without the E.D. Texas conviction, Khuu would have a criminal history score of 8, placing him
28  in Criminal History Category IV.  An adjusted offense level of 29, under CHC IV, yields an advisory
    Guidelines range of 121-151 months.

10, 13. This conduct involved an extraordinary volume of dangerous synthetic drugs, underscoring the seriousness of the offense and the heightened risks such quantities pose to public safety. PSR ¶ 13. Khuu's decision to use false identities, involve third parties in his schemes, and flee from law enforcement when confronted demonstrates the sophistication of his conduct and his disregard for public safety. PSR ¶¶ 7–9, 12. A meaningful custodial sentence is therefore necessary to promote respect for the law, provide just punishment, and deter others engaged in similar importation schemes.

In fact, general deterrence weighs heavily in importation cases. Large-scale international drug trafficking schemes pose serious threats to communities across the United States. A lengthy custodial sentence will send a clear message that those who attempt to profit by importing dangerous synthetic drugs from abroad will face substantial penalties. PSR ¶¶ 20-22.

With respect to Khuu's history and characteristics, the government notes the troubling extent of the defendant's criminal history. PSR ¶¶ 29-37. Khuu's record reflects serious and continuous criminal conduct, beginning with a serious juvenile adjudication and continuing through multiple adult felony convictions, including offenses involving narcotics distribution, resisting law enforcement, and most recently money laundering and operating an unlicensed money transmitting business. *Id.* The pattern demonstrates not only repeated disregard for the law but also an escalation in the seriousness of his conduct over time. From a deterrence standpoint, a significant custodial sentence is necessary to impress upon the defendant, and others similarly situated, that persistent criminal behavior will be met with proportionate consequences. From a rehabilitation standpoint, the sentence must provide structure and sufficient time for the defendant to participate in treatment and educational programming in custody, particularly given his long history of substance abuse and failure to desist from criminal activity while under prior terms of supervision. PSR ¶¶ 41-54.

At the same time, Khuu's personal history provides important context for the Court's consideration. He was raised in a home marked by instability, substance abuse, and violence. PSR ¶ 43. His mother struggled with drug addiction and mental illness, while his father was incarcerated during much of his childhood. PSR ¶ 43. Khuu himself was physically abused and placed in foster care and group homes at a very young age. PSR ¶¶ 45, 47. And, he turned to drug use as a teenager, consuming alcohol, marijuana, ecstasy, Xanax, and cocaine regularly from a young age. PSR ¶¶ 52-53.

1    Despite this troubled background, Khuu has expressed genuine remorse. He admitted

2    responsibility during his presentence interview, acknowledging that his conduct harmed the community

3    and was tied to his own addiction and poor choices. PSR ¶ 16. He also conveyed that the loss of a close

4    friend to overdose in 2024, his grandmother's illness, and his absence from his younger siblings' lives

5    have made him realize the destructive cycle he has perpetuated. *Id.* These statements reflect a degree of

6    insight and the potential for rehabilitation *if* he takes advantage of substance abuse and mental health

7    treatment during incarceration and supervised release. PSR ¶¶ 16, 51, 54.

8    The government recognizes that specific deterrence is an important factor in this case. As noted,

9    Khuu has a significant criminal record, and he committed the instant offense while under a criminal

10   justice sentence. PSR ¶¶ 33. A custodial sentence is therefore necessary to impress upon him the

11   consequences of repeated criminal conduct. Nevertheless, a sentence of 76 months, although below the

12   advisory range of 140–175 months, appropriately accounts for his mitigating personal history and avoids

13   a punishment greater than necessary.

14   Finally, the government acknowledges that the defendant initially agreed to a global resolution

15   with the Eastern District of Texas, under which he would plead guilty to both the Texas and Northern

16   District of California charges at the same time, with the understanding that his sentence would not

17   exceed 120 months. Although that agreement was not ultimately executed, the government's current

18   recommendation, 76 months, to run concurrent with the 87-month sentence imposed in the Eastern

19   District of Texas, effectively results in an aggregate custodial term of approximately 120 months for

20   both sets of convictions.[2] This outcome is consistent with the original intent of the global resolution,

21   while also reflecting the seriousness of the conduct in both districts.

22   //

23   //

24   //

25

26   _____

27   [2] Had Khuu received a 120-month sentence in the Eastern District of Texas, his projected release date, assuming application of good time credits, would have been approximately February 19, 2031. Because he will not receive any credit toward his Northern District of California sentence until the Court

28   imposes sentence on October 3, 2025, a concurrent term of 76 months will result in a projected Bureau of Prisons release date of roughly February 2031, again assuming the accrual of good time credits.

UNITED STATES' SENTENCING MEMO.          6
CR 3:22-CR-302 CRB

1    **V.    Conclusion**

2        For the foregoing reasons, the government respectfully recommends that the Court sentence

3    defendant John Khuu to a term of 76 months' imprisonment, followed by three years of supervised

4    release, along with the mandatory special assessment and forfeiture.

5

6    DATED:  September 26, 2025                    Respectfully submitted,

7                                                 CRAIG H. MISSAKIAN
                                                   United States Attorney
8

9                                                     /s/
                                                   CHARLES F. BISESTO
10                                                 Assistant United States Attorney

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28